†STATE OF OHIO EX REL. FREASE V. KREIGHBAUM ET AL., COMMISSIONERS.

LAW REQUIRING COUNTIES TO PROVIDE ARMORIES FOR O. N. G. IS INVALID.

Section 3085, Revised Statutes, passed March 28, 1894, O. L., 91, page 100, is in violation of section 5, article IX, section 7, article X, section 2, article XII, of the constitution, and is therefore void.

APPEAL from common pleas court of Stark county.

JENNER, J. (orally.)

This case is submitted on an agreed statement of facts, and the question presented is as to the constitutionality of section 3085, Revised Statutes, as amended March 28, 1894. (O L., 91, page 100.)

The admitted facts are as follows: That the relator, Harry Frease, is the duly elected, commissioned, qualified, and acting captain commanding company "I," of the 8th regiment of infantry, O. N. G., and by reason of seniority of commission is for military purposes the commanding officer of the companies of the O. N. G., stationed in the city of Canton; and as such officer he has a speicific legal right to the remedy sought, and has no other legal or adequate remedy.

That there are now stationed in the city of Canton, in the county of Stark and state of Ohio, three companies of infantry, to wit: companies "I," "F" and "L," and a hospital corps of the 8th regiment of infantry. That said organizations are, by the military laws of Ohio, required to meet once each week for drill, and at all times to respond to a call from the sheriff of the county, the mayor of any municipal corporation therein or a judge of any of the courts of the state to act in aid of the civil authorities; and when so called and acting the expense of maintenance as well as the pay of the members thereof is paid by the state of Ohio, on order of the adjutant-general.

That said organizations have had issued to them by the state of Ohio, uniforms, arms and other equipments, amounting to at least fifteen thousand dollars; and have also acquired by purchase, out of their own funds, a large amount of field and camp equipment. That the quarters provided by said county commissioners on and after the 1st day of April, 1895, for said organizations having their headquarters in the city of Canton, are inadequate, insecure, and in no way suitable for the purpose, having no drill shed, or any other place where said or-ganizations, or any portions thereof, can meet for the purpose of drills as re-quired by law. The arrangement of the rooms, and the public and open character of the building rendering the arms, and equipment insecure and liable to inva-sion and destruction.

That the adjutant-general of the state of Ohio has served upon the board of county commissioners of Stark county, formal written notice that the quarters now being provided by said board are far from satisfactory, and that he cannot approve the same.

That the adjutant-general of the state, together with the officers of the local military organizations heretofore set forth, personally made demand upon the board of county commissioners of Stark county that they take such steps as may be necessary to erect or otherwise provide a suitable armory, adequate to the proper maintenance and efficiency of said companies, the safe keeping of the arms and equipments, uniforms and other military property thereof.

That the board of county commissioners of Stark county, did on the 8th day of July, 1895, refuse to take any action in the premises, and spread upon the records of the minutes of said board a formal refusal, substantially in the follow-

* The judgment in this case was affirmed by the Supreme Court; unreported, 54 O. S., 615. The circuit decision is also referred to in 57 O. S., 436, 449.

State of Ohio v. Kreighbaum.

ing language: "An application was duly made to the commissioners by the adjutant-general and the officers of companies "I," "F" and "L," of the 8th regiment of infantry, all the members of said companies residing in said county of. Stark, for the erection of an armory adequate to the proper maintenance and efficiency of said companies, and upon motion, unanimously passed; said appli-- cation was refused and rejected."

In determining the constitutionality of this section of the statute, it is neces-- sary to examine the entire act of which it forms a part, and the previous legislation on this same subject, recently enacted by the legislature.

April 18, 1892, the legislature passed the act found in O. L., 89, page 411, pertaining to the militia of the state, providing as to how it should be constituted, organized and apportioned.

Section 3085 of that act provides that the board of county commissioners. shall provide a suitable armory for the purposes of drill and for the safe keeping of the arms, equipments, uniforms and other military property furnished by the state. The constitutionality of that section was considered and passed upon by the circuit court of the third circuit, sitting in Putnam county, and reported in. 3 Ohio Circ. Dec., 710. The opinion of the court was announced by SENEY, J. We concur in the reasoning and the conclusion the court arrived at in that case..

No doubt in view of the decision in that case, the legislature repealed that section of the statute, and April 27, 1893, enacted by way of amendment, section 3085, as found in O. L., 90, 367.

The original section, required the county to bear the expense of the erection of a suitable armory. The section as enacted April 27, 1893, provided that "the- adjutant-general shall by contract or otherwise, for a period not exceeding one year from the passage of this act, provide for each organization in the county where- a majority of the officers and enlisted men of any regiment, battalion, company,. troop or battery reside, a suitable armory for the purpose of drill, and for the safe keeping of the arms, equipments, uniforms and other military property furnished by the state, expenses to be paid by the state."

On March 28, 1894, this section was repealed, and the one now under consideration by this court, enacted. It reads as follows: "Section 3085. The board of county commissioners of a county in which all or a majority of the officers. and enlisted men of any regiment, battalion, company, troop or battery reside- shall provide for each organization a suitable armory for the purpose of drill, and. for the safe keeping of the arms, equipments, uniforms and other military prop-- erty furnished by the state; which armory shall be inspected and approved by an officer detailed by the commander-in-chief for such purpose, who shall file with the board of county commissioners a certificate of such inspection and approval.""

Under this last section, instead of the state bearing any of the cost of providing a suitable armory, the county must bear the entire burden.

Section 3085a, provides, among other things, that the expense of armories, including the necessary care, fuel and lights, provided under section 3085 shall' be paid by the county wherein all the members of the military organization reside. This would apply to Stark county under the agreed facts of this case.

This last section provides, among other things, for a certain allowance by the state for the purpose of aiding in paying the expense of armories under this. section. .

It is urged on the part of counsel for the relator that these military organizations are not state organizations, at least, not exclusively so; but that they are- local organizations as well, for the benefit of the city of Canton and Stark county, more especially at least than for the state at large; and that the benefits received. or that may be received by the locality in which the organization has its headquarters, are much greater than can result to more distant portions of the state; that they are subject to the call of the sheriff of the county, the mayor of the- city, the judges of the court, in quelling riots, tumults, or for such police pur-

poses as their services may be required. It is said that no danger can result from such organization, and to hold this law unconstitutional may result in the disbanding of these companies. Certainly the spirit that prompts these military organizations is most commendable; they are entitled to the respect and consideration of the community. And yet, in determining the constitutionality of the law, little consideration can be given to these suggestions.

The property of the state in charge of these companies, and their own property must be safely kept, and an armory is undoubtedly necessary for this purpose, and for the purpose of drill; but the question arises, must the county of Stark pay this expense, or should the state at large do so?

Counsel for the board of commissioners contends that this statute violates certain constitutional provisions. That it is a law of a general and not a local character, and notwithstanding there may be certain incidental benefits to the county of Stark, yet this does not change the character of the law so as to authorize the burden of providing for the military organizations to be paid exclusively by citizens of Stark county. It is urged on behalf of the commissioners that this statute contravenes section 5, article IX; section 7, article X; section 2, article XII of the constitution. These constitutional provisions are as follows:

Article IX, section 5—"The general assembly shall provide by law for the protection and safe keeping of the public arms."

Article X, section 7—"The commissioners of counties, the trustees of townships and similar boards shall have such power of local taxation for police purposes as may be prescribed by law."

Article XII, section 2, provides among other things that "* * * laws shall be passed taxing by uniform rule all moneys, credits, etc., * * *," that taxation must be uniform throughout the state.

These constitutional provisions have been considered and construed so frequently by our supreme court that we will not cite authorities at any length. We will refer to the recent case of *Wasson et al.* v. *The Commissioners*, 49 O. S., 622.

This court considered and passed upon the questions arising in that case at a recent term in Wayne county. From our decision it was carried on error to the supreme court. It is known as the "Ohio Agricultural Experiment Station" case.

The supreme court held in that case that "notwithstanding that incidental benefits may accrue to property near such institution by reason of its location, nevertheless money raised by taxation for the purchase of a site and the construction of buildings, is general revenue for the state;" and that "all taxes for general revenue of the state must be levied by a uniform rule upon all the taxable property within the state."

If moneys raised for the purpose of the erection of a building or buildings for this experiment station is general revenue for the state, may it not be claimed that money raised for the erection of an armory for the protection of the military property of the state, and for a home for its active militia is also general revenue for the state?

In announcing the opinion, SPEAR, C. J., on page 635, uses this language: "The object intended is to secure equality and uniformity in the imposition of these public burdens. That is, the tax must be uniform on all the taxable property within the limits of the taxing district. The general assembly, controlled by the section cited, is without power to determine by its own inclination or caprice upon what property and in what proportion the burden shall be laid, or that the burdens of one district may be imposed upon another district. If a county, township or city tax, it must be uniform throughout the limited territory to which it is applicable. If it is a state tax, it must be uniform all over the state." And on page 636 this language: "The character and purpose of the law, not less than its constitutionality, are to be determined by its operation and effect. If, in fact, its purpose is one that concerns and its benefits are to be be-

State of Ohio v. Kreighbaum.

stowed upon the people of the entire state or the people of a particular class in the entire state, as we have already found to be true of the act in question, then it is a law general in its character; and if it seeks to impose taxation for the purpose of carrying out these purposes, it would seem to follow that such taxes are state taxes."

Counsel for the relator call our attention to the inequality in the salaries of the judges of our state as now fixed by the statute law; and that certain counties are permitted to levy taxes for the purpose of paying a salary to these state officers in addition to the salary paid by the state. It is said that the right to levy these taxes to pay the additional salary by certain counties has never been questioned, and therefore the constitutionality of the same is not doubted.

We cannot concur in this conclusion. If such special legislation is constitutional, it would seem to follow that any legislation that the general assembly may choose to enact, is constitutional.

The judges are state officers; their salaries are fixed by general statute, and paid out of the state treasury. By this general statute common pleas judges receive a salary of twenty-five hundred dollars per annum, the circuit court judges four thousand dollars per annum. By a special act, certain common pleas judges receive four thousand dollars, others six thousand dollars per annum; and the circuit judges in one circuit receive five thousand dollars, and in another six thousand dollars per annum. All other circuit judges in the state receive but four thousand dollars. Is it not in contravention of the plain provisions of the constitution to place any portion of the burden of taxation to meet the salaries of these state officers upon a specific locality? When the principles of the common law fail to mete out equal justice, courts will no longer follow them. When the statute law discriminates between judges of the state performing like service and with equal ability, how long should an intelligent legislature permit it to remain on the statute books?

These special enactments are not the less unjust because the increased salary is paid out of the county treasury. Is the discretion of the commissioners to determine when the people of the county shall be taxed to pay the increased salary? Will such an order protect the treasurer who pays the warrant?

The great state of Ohio is certainly able to pay her judicial officers a fair compensation for their services, without calling upon any county to bear more than its ratable share of the burden.

Any circuit judge may be required to perform his official duties in any county of the state, yet most of them get but four thousand dollars a year, and others get six thousand. What would be thought of a law which provided that members of the supreme court if elected from Hamilton county should receive six thousand dollars per annum, but if from any other county in the state only four thousand dollars—would it be less unjust if it applied to the supreme judges than it now is as applying to circuit judges and common pleas judges?

It is by no means probable that the people of Ohio intend that the judges of our court of last resort shall receive less compensation than either circuit or common pleas judges; yet by reason of these special enactments we have this anomalous condition of our laws—a common pleas judge receiving six thousand dollars in one portion of the state, and a supreme judge but four thousand dollars.

A law might as well be enacted and claimed to be constitutional that would give any citizen of Hamilton county who might be elected governor of the state a salary of ten thousand dollars, but if a citizen of any other county only eight thousand dollars.

We conclude, the act for the organization of the militia of the state and to provide suitable armories for the safe keeping of the arms, equipments, uniforms and other military property furnished by the state, is a general law, and not local in its character; and that the cost and expenses provided for by the act should be borne by the state at large, and not by any particular locality.

The taxes raised for the purpose of the erection of armories must come out of the general revenue of the state; and that section 3085 of the Revised Statutes is in contravention of the sections of the constitution herein cited, and is therefore void.

The peremptory writ of mandamus will therefore be refused and the petition dismissed at the costs of the relator.

*Joseph Frease* and *Miller & Pomerene*, Attorneys for Relator.

*C. C. Bow*, Attorney for Defendants.

---

## BILL OF EXCEPTIONS.